UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ANTONELLI PROPERTY MAINTENANCE, INC.;
and MICHAEL ANTONELLI,

                        Plaintiffs,

v.                                              5:18-CV-0409
                                               (GTS/TWD)
ERIE INSURANCE COMPANY,

                        Defendant.
_____

APPEARANCES:                                       OF COUNSEL:

KIRWAN LAW FIRM, PC                       TERRY J. KIRWAN, Jr., ESQ.
  Counsel for Plaintiffs
AXA Tower I, 17th Floor
100 Madison Street
Syracuse, NY 13202

MURA & STORM PLLC                         SCOTT D. STORM, ESQ.
  Counsel for Defendant                         SCOTT MANCUSO, ESQ.
14 Lafayette Square
930 Rand Building
Buffalo, NY 14203

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

      Currently before the Court, in this insurance action filed by Antonelli Property Maintenance, Inc., and Michael Antonelli ("Plaintiffs") against Erie Insurance Company ("Defendant"), are (1) Defendant's motion for summary judgment, and (2) Plaintiffs' cross-motion for summary judgment. (Dkt. Nos. 15, 16.) For the reasons set forth below, Defendant's motion for summary judgment is denied, and Plaintiff's cross-motion for summary judgment is denied.

## I. RELEVANT BACKGROUND

### A. Plaintiffs' Complaint

This diversity action was removed from Onondaga Supreme Court on April 4, 2018. (Dkt. No. 1.) Generally, in their Verified Complaint, Plaintiffs claim that Defendant breached the material terms of its New York Auto Policy, NY-FEP, Commercial Auto Policy Non-Fleet #Q11-6730235 ("Policy One") and/or its Fivestar Contractor's Policy #Q35-720089 ("Policy Two") by failing and refusing to pay Plaintiffs' insurance claim related to a fire and resulting total loss of his insured 2016 Dodge Ram 3500 Megacap Shortbox Diesel Truck, causing Plaintiffs to suffer damages in excess of $100,000.00, resulting from "the loss of the RAM and its contents" and the cost of rental vehicles. (*See generally,* Dkt. No. 2 [Pls.' Compl.].)

### B. Undisputed Material Facts on Defendant's Motion for Summary Judgment

Unless otherwise noted, the following facts were asserted and supported with accurate record citations by Defendant in its Statement of Material Facts and expressly admitted by Plaintiffs in their response thereto. (*Compare* Dkt. No. 15, Attach. 8 [Def.'s Rule 7.1 Statement] *with* Dkt. No. 16, Attach. 3 [Pls.' Rule 7.1 Resp.].)[1]

1. Defendant issued Policy One for the policy period from November 17, 2016, through November 17, 2017, to the named insured "Michael E. Antonelli, Antonelli Property Maintenance."

2. Defendant issued Policy Two for the policy period from November 17, 2016,

---

[1] The Court notes that Plaintiffs admitted each of Defendant's fourteen asserted facts, but added, in response to the facts asserted in Paragraph Numbers 2, 4, and 6, that "Plaintiffs are not seeking recovery for the personal property located within the truck that was destroyed." (*See generally,* Dkt. No. 16, Attach. 3 [Pls.' Rule 7.1 Resp.].)

through November 17, 2017, to the named insured "Antonelli Property Maintenance, Inc."

3. Policy One is a "commercial auto policy" providing liability coverage and property damage coverage with respect to, among other vehicles, the 2016 Dodge Ram that was allegedly involved in a fire loss on April 19, 2017.

4. Policy Two is a "contractor's policy" providing liability coverage and business personal property coverage to the named insured.

5. On April 19, 2017, a fire loss allegedly occurred involving Plaintiffs' 2016 Dodge Ram and the "entire personal contents within" the Ram.

6. On May 22, 2017, Plaintiffs made a claim with Defendant under the two policies at issue with respect to the damage sustained in the fire.

7. On July 12, 2017, Plaintiff Michael Antonelli appeared for an examination under oath with respect to the claims, along with his attorney at that time, Christopher Gaiser.

8. On July 17, 2017, counsel for Defendant sent a letter to Mr. Gaiser requesting additional documents from Plaintiff Antonelli with respect to the claims.

9. On August 1, 2017, counsel for Defendant sent a letter to Mr. Gaiser requesting that he have Plaintiff Antonelli read the transcript of his examination under oath, sign it, and return it to Defendant.

10. On August 17, 2017, counsel for Defendant sent a letter to Mr. Gaiser stating that he had yet to respond to Defendant's counsel's prior two letters and that, if he failed to do so within 10 days, it could "impact his client's right to coverage," as that would cause them to be "in breach of conditions precedent to coverage."

11. On September 11, 2017, after the passage of 25 days from the August 17, 2017,

letter, Defendant sent a denial letter to Plaintiffs, stating that their claim under Policy Two was denied on the basis that Plaintiffs had failed to "complete an inventory of the property that was reportedly damaged in the fire," had failed to respond to Defendant's "request to produce various documents in connection with [their] claim," had "not returned the signed transcript of [Plaintiff Antonelli's] Examination Under Oath," and "did not timely submit a sworn Proof of Loss form" with respect to their claim.

12. On September 13, 2017, after the passage of 27 days from the August 17, 2017, letter, Defendant sent a denial letter to Plaintiffs, stating that their claim under Policy One was also denied on the basis that Plaintiffs had "not promptly responded to [Defendant's] request to produce various documents in connection with the investigation of [their] claim and have not returned the signed transcript of [Plaintiff Antonelli's] examination under oath."

13. On September 25, 2017, 14 and 12 days after the denials, respectively, counsel for Defendant received a letter from Mr. Gaiser dated September 21, 2017, that included the signed transcript of Plaintiff Antonelli's examination under oath and, as stated by Mr. Gaiser, "as much of the requested documents as I have been provided with by Mr. Antonelli," which amounted to 46 pages of documents. This letter further stated that Plaintiff Antonelli is "continuing to search for all requested documents" and that the reason that no other documents were provided was because they had been "in the subject vehicle and were destroyed by the fire."

14. On September 27, 2017, counsel for Defendant responded to Mr. Gaiser, stating that the "vast majority of the documents that we previously requested from you remain outstanding," and that the September 21, 2017, letter and attached documents "[did] not change [Defendant's] coverage position with respect to the two claims at issue." This letter further

4

stated that Defendant was "presently standing on the grounds for denial set forth in its previously issued denial letters."

      **C.**      **Parties' Briefing on the Motions for Summary Judgment**

            **1.**      **Defendant's Memorandum of Law**

Generally, in its motion for summary judgment, Defendant asserts three arguments. (Dkt. No. 15, Attach. 9, at 6-27 [Def.'s Mem. of Law].) First, Defendant argues that, to the extent Plaintiffs' claim asserts rights under Policy Two, that claim should be dismissed because Plaintiffs have conceded that they have no claim under Policy Two for the personal property in the Dodge Ram at the time of the fire. (*Id.* at 6-9.) More specifically, Defendant argues that Policy Two does not provide automobile coverage, only coverage for personal property, and that, in their answers to Defendant's interrogatory, Plaintiffs acknowledged that they were not asserting a claim for personal items destroyed in the Dodge Ram. (*Id.*)

Second, Defendant argues that Plaintiffs' claim as to Policy One must also be dismissed because they breached the conditions precedent to coverage on that policy by refusing to cooperate and produce the records and documents requested by Defendant. (*Id.* at 9-25.) More specifically, Defendant argues that it sent a letter requesting a list of documents following Plaintiff Antonelli's examination under oath, as well as a letter reminding Plaintiffs of this request and the consequences of failing to comply, but still did not receive any response from Plaintiffs until almost two weeks after the denial of Plaintiffs' claims. (*Id.* at 13-16.) Defendant also argues that, even though Plaintiffs did provide some documents after the denial, they still did not provide most of the documents requested, which Plaintiffs' counsel at that time asserted were in the vehicle at the time of the fire and consequently destroyed. (*Id.* at 17.) Defendants argue

5

that Plaintiffs' assertion that these documents could not be provided because they were destroyed in the fire is nonsensical because the type of documents requested (W2s, tax returns, a credit report, monthly residence and cell phone statements, etc.) could all be obtained from the relevant source of those documents even if the originals were destroyed in the fire. (*Id.* at 17-19.) Defendant argues that the failure to provide the requested documents means that a condition precedent to coverage under the policies was not satisfied and that, under New York law, an insured's failure to cooperate with an insurance company's investigation of a fire constitutes a material breach of contract. (*Id.* at 19-20, 22-23.)

Third, Defendant argues that Plaintiffs' suit must be dismissed also because they are not in compliance with the provisions in the policies related to the ability to sue Defendant. (*Id.* at 25-27.) More specifically, Defendant argues that the terms of both policies require compliance with the terms of the policy before suit can be brought against Defendant, and that the failure to provide the requested documents, as discussed above, is a failure to comply with the terms of the policies. (*Id.*) Defendant therefore argues that Plaintiffs did not have the right to sue Defendant under the policies.

### 2. Plaintiffs' Opposition Memorandum of Law and Cross-Motion

In opposition to Defendant's motion for summary judgment, Plaintiffs assert three arguments. (Dkt. No. 16, Attach. 2, at 7-20 [Pls.' Opp'n Mem. of Law].) First, Plaintiffs argue that Defendant has not met its burden to show that Plaintiffs willfully failed to cooperate with Defendant's investigation because they in fact provided all of the relevant and material documents in their possession. (*Id.* at 7-10.) More specifically, Plaintiffs argue that Defendant has a heavy burden for showing that Plaintiffs failed to cooperate, and that the duty of

6

cooperation is itself a standard of substantial compliance, which Plaintiffs have met. (*Id.*)

Second, Plaintiffs argue that the documents that Defendant claims are outstanding are not material or relevant to the investigation of the fire, and therefore failure to produce those documents is not willful or a violation of the cooperation clause or any condition precedent. (*Id.* at 10-18.) More specifically, Plaintiffs argue that (a) financial records are not material to the investigation because Defendant has never claimed that the circumstances of the fire are suspicious and Plaintiff has not submitted a claim for any business-related financial loss, (b) residence and cell phone records are not material to the fire, (c) evidence related to the contents of the Dodge Ram is not material because Plaintiffs are not making a claim for personal property, and (d) evidence related to a sale of two snow blades on the date of the fire, videos or pictures of the Dodge Ram after April 2017, financial business records from January 2016 through the date of the fire, documentation of contracts with Morgan Management, income tax returns, and documentation of personal property are all not germane to the investigation. (*Id.*) Plaintiffs also argue that they do not know of "any and all other documents" that they believe would support their claim that they should have produced in addition to the specific documents requested. (*Id.*)

Third, Plaintiffs argue that the provisions in the policies related to the right to sue Defendant are conflicting and ambiguous. (*Id.* at 18-20.) More specifically, Plaintiffs argue that Policy One's statement that the insured must be in compliance before commencing suit is in conflict with Policy Two's statement that a suit must be commenced within two years of the date of the loss, and that the requirement that the "legal liability of anyone we protect must be determined before we may be sued . . . [which] may be made by a court of law" is ambiguous because it seems to state that the person can in fact proceed directly to a court. (*Id.*) Plaintiffs

argue that any such ambiguities or conflicts must be resolved in favor of Plaintiffs as the insureds. (*Id.* at 18.)

Additionally, Plaintiffs also separately assert that they are entitled to summary judgment because the Dodge Ram was insured under the relevant policies and was destroyed by the fire, and Defendant has offered no proof that the fire was suspicious. (*Id.* at 20-21.)

### 3. Defendant's Reply Memorandum of Law and Response in Opposition to Plaintiffs' Cross-Motion

In opposition to Plaintiffs' cross-motion for summary judgment, Defendant argues that the motion is unsupported and premature, noting that the parties have yet to conduct discovery on Defendant's other affirmative defenses that are not discussed in Defendant's motion, and that there is evidence suggesting possible suspicious activity related to the fire to support its affirmative defense of fraud in particular. (Dkt. No. 17, Attach. 1, at 6-7 [Def.'s Reply Mem. of Law].)

In reply to Plaintiffs' opposition, Defendant asserts two arguments. (*Id.* at 7-17.) First, Defendant argues that Plaintiffs have conceded that they are not asserting a claim under Policy Two and therefore any part of the claim related to Policy Two should be dismissed. (*Id.* at 7.)

Second, Defendant argues that, contrary to Plaintiffs' arguments, the documents requested were relevant and material. (*Id.* at 8-17.) More specifically, Defendant argues that it is undisputed that Plaintiffs never objected to the document demands (or even responded to those demands) prior to the denial of Plaintiffs' insurance claims, and certainly never objected to the demands based on grounds of materiality or relevance. (*Id.* at 9-11.) Defendant argues that the documents it requested are the "sorts of documents and records that are routinely requested as

part of an investigation into a fire with an unknown cause where human involvement has not been eliminated as a cause," and that the evidence already revealed through the examination under oath indicated odd financial and other activities on Plaintiffs' part leading up to the fire that were suspicious. (*Id.* at 11-15.)

### 4. Plaintiffs' Sur-Reply Memorandum of Law and Reply to Defendant's Opposition to their Cross-Motion

In reply to Defendant's reply, Plaintiffs argue that they should not be found to have failed to cooperate or to meet the conditions precedent to the policies because they had no reason to believe the documents requested were relevant at the time of the request given that Defendant had not provided any indication that it suspected arson or other suspicious circumstances until nearly a year after it made the request. (Dkt. No. 22, at 6-7 [Pls.' Sur-Reply].)

### 5. Defendant's Sur-Reply

In reply to Plaintiffs' sur-reply, Defendant argues that Plaintiffs' argument that it did not learn of the suspected arson or fraud until this litigation does not entitle them to relief on Defendant's motion for summary judgment. (Dkt. No. 23, at 4-8 [Def.'s Sur-Reply].) More specifically, Defendant argues that (a) because Plaintiffs never objected to the document requests as being not relevant or material, later learning that fraud or arson was suspected would not have changed their actions in failing to comply with those requests, (b) Defendant was under no obligation to share the results of the investigation with Plaintiffs as a prerequisite to them complying with the conditions of their insurance policy, noting in particular that Plaintiffs failed to cite legal authority supporting their argument, and (c) even if Plaintiffs were required to know that Defendant suspected fraud at the time of the document requests, the suspicious activity

9

reported in Plaintiff Antonelli's testimony alone would have provided a sufficient basis for making those requests. (*Id.*) Defendant additionally argues that Plaintiffs' excuses for failing to comply with the document requests are not credible, given that they have changed their reason for failing to comply three times over the course of this briefing (i.e., they first asserted that they could not produce the documents because they burned in the fire, then they argued that the requested documents were not material, and then they argued that they were not required to provide the requested documents because they had no reason to know that arson was suspected at the time the documents were requested). (*Id.* at 4-5.)

### D. The Motion Hearing of May 23, 2019, and Subsequent Status Reports

On May 23, 2019, the parties appeared at a motion hearing before the Court, during which the parties' representatives made arguments related to their respective motions, and the Court (a) encouraged counsel to exchange the information and documents that are the subject of the motions for summary judgment and that are related to an investigation of potential fraud or arson, and (b) recommended that counsel discuss possible settlement of the case. (Text Minute Entry filed May 23, 2019.) The Court also directed counsel to file status reports by July 23, 2019. (*Id.*) On July 26, 2019, Plaintiff's counsel filed a status report indicating the following: (a) Defendant's counsel had requested several items; (b) he "supplied everything that [he] can, which is most of what [Defendant's counsel] requests"; and (c) he was waiting on the return of an executed Cell Phone Authorization from Plaintiff Antonelli, "which should complete Plaintiff's responses." (Dkt. No. 27.) On July 29, 2019, Defendant's counsel filed a status report indicating the following: (a) he "largely concur[red]" with Plaintiff's counsel's status report (though he stated there was "perhaps room to debate whether 'most'" of the requested material

10

had been provided); (b) he was waiting to receive an authorization to obtain Plaintiff Antonelli's cell phone records; (c) he was waiting to receive Plaintiff Antonelli's tax returns; and (d) upon receipt of those pending records, he anticipated that "it will be necessary to take Mr. Antonelli's deposition in light of some of the new information that has already been provided." (Dkt. No. 28.) No further status reports have been received by the Court through the date of this decision.

## II. LEGAL STANDARD GOVERNING A MOTION FOR SUMMARY JUDGMENT

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[2] As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant. *Anderson*, 477 U.S. at 255. In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). However, when the movant has met its initial burden, the non-movant must

---

[2] As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted]. As the Supreme Court has explained, "[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

come forward with specific facts showing a genuine issue of material fact for trial. Fed. R. Civ. P. 56(a), (c), (e).[3]

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant willfully fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute.[4] Of course, when a non-movant willfully fails to respond to a motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Rather, as indicated above, the Court must assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the movant. *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 7.1(b)(3). What the non-movant's failure to respond to the motion does is lighten the movant's burden.

For these reasons, this Court has often enforced Local Rule 7.1(a)(3) by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that statement.[5]

---

[3] Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching number paragraphs, and supports any denials with a specific citation to the record where the factual issue arises. N.D.N.Y. L. R. 7.1(a)(3).

[4] *Cusamano v. Sobek*, 604 F. Supp.2d 416, 426 & n.2 (N.D.N.Y. 209) (Suddaby, J.) (citing cases).

[5] Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs, and supports any denials with a

Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(b)(3).[6] Stated another way, when a non-movant fails to oppose a legal argument asserted by a movant, the movant may succeed on the argument by showing that the argument possess facial merit, which has appropriately been characterized as a "modest" burden. *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL 2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

## III. ANALYSIS

After careful consideration, the Court denies both parties' motions for summary judgment. As discussed above in Part I.C. of this Decision and Order, the parties acknowledge that there is outstanding evidence relevant to the decision on the insurance claim underlying this action, and that Plaintiffs have either now provided evidence identified in Defendant's motion for

---

specific citation to the record where the factual issue arises. N.D.N.Y. L. R. 7.1(a)(3).

[6] *See, e.g., Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]; *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

summary judgment, or the parties are in the process of exchanging those records. Additionally, Defendant has indicated that it is also actively pursuing further discovery (in the form of deposition testimony from Plaintiff Antonelli) as a result of the more recently obtained information and documents. Given the fact that the parties recognize that discovery was incomplete at the time the motions for summary judgment were submitted to the Court, and that the parties continue to seek specific and relevant evidence that may very well raise genuine disputes of material fact as to the core issues involved in Plaintiff's claims, the Court denies both parties' motions for summary judgment as premature. *See Toussie v. Allstate Ins. Co.*, 213 F. Supp. 3d 444, 445 (E.D.N.Y. 2016) (noting that "courts routinely deny motions for summary judgment as premature when discovery over relevant matters is incomplete"); *accord, Petaway v. Osden*, 17-CV-0004, 2017 WL 4678188, at *1 (D. Conn. Oct. 17, 2017); *cf. Vega v. Rell*, 611 F. App'x 22, 26 (2d Cir. 2015) (rejecting plaintiff's arguments that the motion for summary judgment was premature where plaintiff had not pointed to any specific discoverable information he hoped to still obtain that would have raised a material issue of fact).

**ACCORDINGLY**, it is

**ORDERED** that Defendant's motion for summary judgment (Dkt. No. 15) is **DENIED**; and it is further

**ORDERED** that Plaintiffs' cross-motion for summary judgment (Dkt. No. 16) is **DENIED**; and it is further

**ORDERED** that Plaintiff shall forward a written settlement demand to Defendant no later than October 29, 2019, and the parties shall engage in good-faith settlement negotiations between Defendant's receipt of that written settlement demand and the occurrence of a settlement

conference before the undersigned in chambers in Syracuse, New York, on **November 19, 2019 at 10:00 AM**, at which time counsel shall appear in person with settlement authority.

Dated: September 26, 2019
      Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge